**Alexander G. Cabeceiras, Esq.**
**Derek Smith Law Group, PLLC**
*Attorneys for Plaintiff*
**One Penn Plaza, Suite 4905**
**New York, New York 10119**
**T: (212) 587-0760**
**F: (212) 587-4169**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------X
BRANDIE BOOKHART,

                                                              Civil Docket No.:  2:20-cv-1136

              Plaintiff,

    -against-

                                                              **COMPLAINT**

THE BOARD OF TRUSTEES OF
BERGEN COUNTY COMMUNITY
COLLEGE, BERGEN COUNTY
COMMUNITY COLLEGE,
BRIAN AGNEW,
GWENDOLYN HAREWOOD,

                      Defendants.          Plaintiff Demands a
                                                          Trial by Jury

-----------------------------------------------------------X

       Plaintiff, BRANDIE BOOKHART by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains against Defendants as follows:

**NATURE OF THE CASE**

1. Plaintiff BRANDIE BOOKHART brings this action pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § § 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ["Title VII"]), New Jersey State Law, and New Jersey common law, and seeks declaratory relief and damages to redress the injuries

Plaintiff has suffered as a result of sex discrimination, hostile work environment and retaliation at the hands of the Defendants.

## JURISDICTION AND VENUE

2. This Court has jurisdiction based on 42 U.S.C § 2000e-5(f)(3) and 28 U.S.C §§ 1331 and 1343 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

3. Plaintiff has satisfied all administrative prerequisites and is filing this action within ninety (90) days of receiving her Right to Sue Letter pursuant to 29 CFR § 1601.28.

4. Venue is proper in this District is proper pursuant to 28 U.S.C § 1391 (b) because events or omossions which gave rise to the claims asserted herein occurred within this Court's jurisdiction.

## PARTIES

5. At all times material, Plaintiff, BRANDIE BOOKHART ("Plaintiff" or "BOOKHART"), was and is an individual female who is a resident of the State of New Jersey, County of Essex.

6. At all times material, The Board of Trustees of Bergen Community College and Bergen Community College, a county college organized under *N.J.S.A.* 18A:64A-1 et seq., (hereinafter collectively referred to as "BCC") are and was an educational institution located in Bergen County, New Jersey, receiving Federal financial assistance.

7. At all times material, Defendant BRIAN AGNEW ("AGNEW") was and is an Executive Vice President at BCC and held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, including the ability to hire, discipline and fire Plaintiff.

8. At all times material, Defendant GWENDOLYN HAREWOOD ("HAREWOOD"), was and is a Human Resources Manager at BCC and held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, including the ability to hire, discipline and fire Plaintiff.

## STATEMENT OF FACTS

9. At all times material, BCC employed Plaintiff.

10. In or around January of 2019, BCC hired AGNEW as an Executive Vice President.

11. Upon information and belief, at the time of hiring AGNEW, BCC knew or should have known AGNEW was a particular danger to women in the workplace.

12. Upon information and belief, BCC failed to, or knew, or should have known, AGNEW's employment history at other educational institutions.

13. At all times material, BCC failed to implement an adequate venting process for new employees and/or managers.

14. At all times material, AGNEW was "second in command" at BCC, reporting only to BCC's President MICHAEL D. REDMOND ("REDMOND").

15. At all times material, AGNEW was and is a proxy and/or alter ego of BCC.

16. At all times material, AGNEW was Plaintiff's supervisor, holding authority to dictate Plaintiff's daily work activities, hire Plaintiff, or fire Plaintiff.

17. In or around February of 2019, AGNEW entered Plaintiff's office and shut the door. Within, AGNEW asked Plaintiff whether Plaintiff's marriage was hard. Plaintiff quickly changed topics. Plaintiff was uncomfortable with AGNEW's personal questions.

18. Plaintiff then told AGNEW that another institution had reached out to her for a phone interview. AGNEW responded, "I thought you were going to tell me you are secretly in love with me." Again, AGNEW's comments made Plaintiff extremely uncomfortable.

19. In or around March of 2019, AGNEW again entered Plaintiff's office and shut the door. Within, AGNEW repeatedly ask Plaintiff if he could trust her. AGNEW also asked Plaintiff if he can trust BCC's Executive Assistant DRORIT BECKMAN. Plaintiff was confused and intimidated by AGNEW's on-going emphasis on who he could "trust" in the workplace.

20. In or around March of 2019, AGNEW again entered Plaintiff's office and shut the door. Within AGNEW expressed to Plaintiff that he wished he had a "safe space" at work and could, again, trust someone at BCC.

21. At all times material, during AGNEW's attempt to groom Plaintiff into someone he could "trust," AGNEW was firing BCC employees.

22. On or about March 21, 2019, Defendants terminated WALDON HAGAN.

23. In or around March of 2019, AGNEW demanded Plaintiff come into his office. Once inside, AGNEW shut the door behind Plaintiff. AGNEW then said to Plaintiff, among other things, "I need to figure out what to do with you." AGNEW then told Plaintiff she needs to figure out "where you want to go in your career." Plaintiff was intimidated and feared AGNEW would terminate her.

24. In or around April of 2019, AGNEW, in a closed-door meeting in BCC's board room, again told Plaintiff he needed to "figure out" what to do with Plaintiff.

25. On or about April 11, 2019, Defendants terminated COREY ATKINSON.

26. In or around May of 2019, AGNEW outfitted his office and conference room to be sound proof.

27. In or around May of 2019, AGNEW entered Plaintiff's office and shut the door. AGNEW began the conversation in a professional manner. AGNEW then stood up at the front of Plaintiff's desk and said "I want to kiss you." Plaintiff was caught off guard. Plaintiff immediately change the subject.

28. In or around May of 2019, AGNEW repeatedly would tell Plaintiff, among other things, "I don't know what to do with you." Plaintiff was in fear that because she did not comply with AGNEW's desire to kiss her and discuss personal matters, he would terminate her.

29. In or around June of 2019, Plaintiff was working late. Plaintiff went into AGNEW's office

to discuss work related topics. AGNEW then invited Plaintiff to continue the work related discussion over dinner at nearby Bar Louie. Plaintiff agreed.

30. At Bar Louie, Plaintiff discussed how over-worked Plaintiff had been, different committees she was on, the hiring of new employees, and other work related topics that Plaintiff was interested in.

31. AGNEW then told Plaintiff, "Let's play 20 questions!" AGNEW then began to ask Plaintiff a series of questions, some of which were sexual. AGNEW's questions included, but were not limited to, "have you ever cheated on your husband," "what's your favorite sex position," "do you find other men on campus attractive," "have you ever messed around with anyone else at the college," "do you find me attractive" and "can I trust you?"

32. Plaintiff, fearing for her job, reluctantly answered. After the game was over, Plaintiff became upset and asked to return to the office. AGNEW agreed.

33. That evening, back at BCC, AGNEW told Plaintiff to "protect" him. AGNEW told Plaintiff he needs to feel safe. AGNEW instructed Plaintiff not to "fuck [him] over."

34. In or around June of 2019, BCC terminated Executive Director of Finance VICTOR ANAYA. As a result, AGNEW took ANAYA's secretary.

35. In or around June through July of 2019, AGNEW repeatedly asked Plaintiff to meet with him on Fridays and weekends, outside of work. Plaintiff repeatedly declined any and all invitations to meet AGNEW outside of work or on her days off.

36. In or around July of 2019, Plaintiff went on vacation. Plaintiff alerted everyone at BCC she would be on vacation, including AGNEW.

37. On or about July 9, 2019, AGNEW texted Plaintiff twice, despite knowing she was on vacation.

38. Upon returning from vacation, in or around July of 2019, AGNEW entered Plaintiff's office

        and shut the door. AGNEW then told Plaintiff he misses her. Plaintiff asked AGNEW, "What exactly do you mean?" AGNEW stumbled over his words and did not give Plaintiff a direct answer.

39. As a result of AGNEW's continued harassment and threats of job security, Plaintiff became increasing emotionally distressed.

40. On or about July 14, 2019, due to stress from Defendants, Plaintiff was forced to drop out of the New Jersey Department of Education State work group.

41. On or about September 5, 2019, BCC's Human Resource Manager GWENDOLYN HAREWOOD ("HAREWOOD") demanded Plaintiff come into her office. Within, HAREWOOD began to reprimand Plaintiff because of Plaintiff's bra color. HAREWOOD took issue with the fact that a red bra strap could be seen on top of Plaintiff's shoulder if Plaintiff removed her scarf and sweater. Four times, while reprimanding Plaintiff, HAREWOOD demanded to know what Plaintiff's bra size was. Plaintiff felt uncomfortable giving her bra size to HAREWOOD and refused to do so.

42. HAREWOOD then began to ask Plaintiff about her personal life. HAREWOOD asked Plaintiff, among other things, if her husband had a job and how much money Plaintiff's husband made. Plaintiff left HAREWOOD's office upset.

43. On the same day, while leaving BCC, AGNEW told Plaintiff that he "heard things" about Plaintiff—assumingly alluding to the conversation Plaintiff had with HAREWOOD. AGNEW then blew kisses at Plaintiff as she walked away.

44. On or about September 13, 2019, Plaintiff had what felt like a panic attack at work. She was crying, distraught, and could not concentrate. BCC's Assistant Director of HR YVETTE AVILES ("AVILES") saw Plaintiff upset and asked her what was wrong. Plaintiff relayed to AVILES that AGNEW was trying to terminate her.

45. On or about September 16 and 17, 2019, due to symptoms of depression and anxiety, Plaintiff took sick days.

46. In or around September of 2019, BCC's KAROLINA WOLFE ("WOLFE") noticed Plaintiff was distraught at her desk. WOLFE asked "what's wrong with you?" Plaintiff could hardly speak. The two decided to go for a walk outside. Outside, Plaintiff disclosed to WOLFE that AGNEW had been inappropriate with her. WOLFE, shocked, responded, "me too."

47. Plaintiff was shocked other women in the office were being subject to the same unwanted sexual comments and conduct.

48. On or about September 19, 2019, AGNEW entered Plaintiff's office and again shut her door. AGNEW told Plaintiff that he spoke to Plaintiff's friend about a job opportunity. Cryptically, AGNEW told Plaintiff he would not tell her who the friend was, as it would "be very bad." Plaintiff was confused. AGNEW then told Plaintiff "you're doing a great job but you're not protecting [BCC]." Plaintiff was again confused and feared she would be terminated for "not protecting" BCC.

49. In or around September of 2019, AGNEW offered to take Plaintiff and NALAH CLARK to lunch. Plaintiff accepted. At lunch, AGNEW talked about wearing a speedo. He then picked up his phone and told Plaintiff to "look at this." Plaintiff, believing AGNEW was showing a picture of him in a speedo, asked him to stop and looked away. AGNEW continued to try and force the phone in front of Plaintiff's face. Plaintiff continued to turn away and begged AGNEW to stop.

50. In or around late September of 2019, HAREWOOD demanded Plaintiff come into her office. Within, HAREWOOD told Plaintiff she would "have more respect" for Plaintiff if Plaintiff declined lunch with AGNEW in the future. Plaintiff was confused by HAREWOOD's comment.

51. In or around late September of 2019, as a result of the severe emotional distress, on-going panic attacks, and emotional break-downs at work, Plaintiff had to remove herself from teaching her Friday evening class.

52. In or around early October of 2019, HAREWOOD entered Plaintiff's office. HAREWOOD demanded Plaintiff pull her shirt up. Plaintiff refused. Plaintiff was shocked at HAREWOOD's behavior.

53. On the same day, AGNEW entered Plaintiff's office. AGNEW asked Plaintiff if she was ignoring him. AGNEW then began to brag about his weight loss and moved his jacket to show Plaintiff his waist line. Plaintiff asked him to "stop" as she had a headache and did not want to speak. AGNEW then demanded Plaintiff "make time" for him. AGNEW told Plaintiff to call him at night, mornings, or any time she wanted.

54. On or about October 7, 2019, BCC constructively terminated Plaintiff due to Defendant AGNEW's sexual harassment.

55. That same day, AGNEW entered Plaintiff's office. AGNEW told Plaintiff he was going to miss her. AGNEW then asked Plaintiff to go out to dinner to "mourn" the fact that Plaintiff was constructively terminated. Plaintiff declined. AGNEW then demanded Plaintiff "come here." AGNEW then grabbed Plaintiff and held Plaintiff's head close to his chest. Plaintiff was extremely uncomfortable by the prolonged hug and head grab.

56. On or about October 8, 2019, HAREWOOD interrogated Plaintiff on her reason for leaving BCC. HAREWOOD asked Plaintiff "Is there something I should know that could harm the college?" Plaintiff told HAREWOOD, "I don't want to talk about it. I left because stuff goes on here that doesn't sit right with me, it's effecting my health." HAREWOOD continued to inquire, "Well, what is it? Is it something I did?" Plaintiff, upset, simply told HAREWOOD "it's everything" and that she was not emotionally able to speak about it.

57. On or about October 14, 2019, Plaintiff informed BCC's President REDMOND about AGNEW's sexual harassment.

58. Thereafter, REDMON, NANCY ADIS, and RICHARD COMERFORD met with Plaintiff.

59. On or about October 15, 2019, AGNEW went around BCC's office telling employees that Plaintiff was "fucked up" and that "taking people down is [Plaintiff's] M.O."

60. On or about October 16, 2019, AGNEW called RICHARD COMERFORD. AGNEW told COMERFORD that "the situation is bullshit" and threatened that there is going to be "trouble." COMERFORD told Plaintiff. Plaintiff was and is in fear for her safety.

61. In or around October of 2019, AGNEW attempted to coach witnesses in BCC's investigation into AGNEW's behavior. AGNEW purposefully and intentionally intimidated DRORIT BECKMAN and MONICA RODRIQUEZ.

62. Upon information and belief, AGNEW has demonstrated his particular unfitness and dangerous attributes by repeatedly and maliciously subjecting multiple BCC employees to unwanted sexual harassment.

63. At all times material BCC knew, should have known, or had reason to know of AGNEW's danger toward BCC employees.

64. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer from anxiety and severe emotional distress.

65. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff has been diagnosed with anxiety and is treating to combat her symptoms.

66. Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

67. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

68. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected the Plaintiff on a frequent and ongoing basis throughout Plaintiff's employment.

69. Plaintiff claims a continuous practice of discrimination and claims a continuing violations and makes all claims herein under the continuing violations doctrine.

70. Plaintiff claims that Defendants discriminated against and constructively terminated Plaintiff because of her sex and because she complained or opposed the unlawful conduct of Defendants.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII
## [Not Against Individual Defendants]

71. Plaintiff repeats and realleges each and every allegation made in the above paragraph of this complaint.

72. Title VII states in relevant part as follows:

    "(a) Employer practices:

    It shall be an unlawful employment practice for an employer:

    (1) to fail or refuse to hire or to discharge any individual, or otherwise
        to discriminate against any individual with respect to his compensation,
        terms, conditions or privileges of employment, because of such
        individual's race, color, religion, sex, or national origin."

73. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act 1964, 42 U.S.C. Section(s) 2000e et seq. as amended, for relief based upon the unlawful employment practices of the above named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based,

in whole or in part, upon an employee's gender.

74. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C 2000e et seq., by constructively terminating and otherwise discriminating against Plaintiff as set forth herein because of Plaintiff's sex.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII [Not Against Individual Defendants]

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. Title VII of the Civil Rights of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to… discriminate against any of his employees… because she has opposed any practices made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter,"

77. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, condition or privileges of employment because of her opposition to the lawful employment practices of Defendants.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW JERSEY STATE LAW

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully length.

79. New Jersey Law Against Discrimination ("LAD") (N.J. Stat. Ann. § 10:5-12) provides that "It shall be an unlawful employment practice, or, as the case may be, an unlawful

discrimination… For an employer, because of the race, creed, color, national origin, nationality, ancestry, age, sex  … to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

80. Defendants violated the section cited herein by constructively terminating and otherwise discriminating against Plaintiff as set forth herein because of Plaintiff's sex.

## AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER NEW JERSEY STATE LAW

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

82. New Jersey LAD (N.J. Stat. Ann. § 10:5-12 (d)) provides that it shall be unlawful for "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act."

83. Defendants violated the section cited herein by unlawfully retaliating against Plaintiff for opposing practices and acts forbidden under New Jersey LAD § 10:5-12.

## AS A FIFTH CAUSE OF ACTION FOR AIDING & ABETTING UNDER NEW JERSEY STATE LAW

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint as if set forth herein more fully at length.

85. New Jersey LAS (N.J. Stat. Ann. § 10:5-12 (e)) provides that it shall be unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or attempt to do so."

86. Defendants violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION
## NEGLIGENT RETENTION

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

88. Under New Jersey law, negligent hiring or retention cause of action has two elements: (1) that the employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons, and (2) that through the employer's negligence, the employee's incompetence, unfitness, or dangerous characteristics proximately caused the injury.

89. Defendants BCC knew or should have known of Defendant AGNEW's dangerous attributes.

90. Because of BCC's negligent hiring process, negligent oversight, and negligent retention, Plaintiff, and other women at BCC, suffered damages.

**WHEREFORE**, Plaintiff respectfully requests a judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues to be tried.

Dated: January 31, 2020
      New York, New York

                          Respectfully Submitted,

                          **DEREK SMITH LAW GROUP, PLLC**

                          */s/Alexander G. Cabeceiras*
                          Alexander G. Cabeceiras, Esq.
                          One Penn Plaza, Suite 4905
                          New York, NY 10119